James F. BEGLEY, Appellant,

v.

MOUNTAIN TOP, INC.; Hon. Robert Spurlin, Director of Special Fund; Hon. Donna Terry, Chief Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 97–SC–318–WC.

Supreme Court of Kentucky.

May 21, 1998.

Otis Doan, Jr., P.S.C., Harlan, for Appellant.

Jeffrey D. Damron, Riley, Walters & Damron, P.S.C., Prestonsburg, for Appellee/Mountain Top, Inc.

David R. Allen, Labor Cabinet—Special Fund, Louisville, for Appellee/Special Fund.

## OPINION OF THE COURT

This matter is before the Court as an appeal by claimant from an opinion of the Court of Appeals affirming the decision of the Workers' Compensation Board (Board). The Board's opinion upheld the order of the Chief Administrative Law Judge (CALJ) to dismiss the application for benefits on the grounds that claimant had failed to establish causation with respect to the defendant-employer, Mountain Top.

Claimant testified that he received daily and continuous exposure to coal dust as a result of his employment in underground mining with multiple employers for approximately twenty years. Further, he alleged that his last date of exposure was his last date of employment with Mountain Top. Finally, claimant related that he has not been employed since that time. The chronology of the relevant events, and the summary of the medical evidence, is as follows:

| | |
|---|---|
| 05/06/93 | Ceased employment with J & L Mining |
| 05/12/93 | Dr. Lane read 05/10/93 x-ray as 2/1 (submitted by claimant) |
| 06/29/93 | Claimant signed and dated application for benefits |
| 07/19/93 | Claimant began employment with Limousine Coal |
| 08/03/93 | Dr. Baker performed pulmonary function tests which results were within normal limits (submitted by claimant) |
| 08/05/93 | Dr. Myers performed exam and read his 08/05/93 x-ray as 2/1 (submitted by claimant) |
| 08/23/93 | Dr. Anderson read 08/05/93 x-ray as 2/2 (submitted by claimant) |
| 08/31/93 | Claimant filed application for benefits (naming J & L and SF) |
| 09/29/93 | Dr. Lane performed exam and read his 09/29/93 x-ray as 2/2 (submitted by claimant) |
| 10/02/93 | Claimant ceased employment with Limousine Coal |
| 10/06/93 | Claimant began employment with Mountain Top |
| 10/25/93 | Dr. Vuskovich performed exam and read 10/25/93 x-ray as 1/1 (submitted by SF) |
| 11/15/93 | Claimant laid-off from Mountain Top |
| 12/06/93 | J & L Mining took claimant's deposition |
| 12/08/93 | Dr. Poulos read 12/08/93 x-ray as 1/0 (submitted by J & L Mining) |
| 03/15/94 | Prehearing conference with ALJ Fossett wherein claimant was given 15 days to name another defendant |
| 04/11/94 | Claimant moved to amend application to join Mountain Top as defendant |
| 05/10/94 | ALJ Fossett sustained motion to join Mountain Top as a defendant |
| 10/27/94 | Claimant's counsel moved to withdraw and new counsel filed entry of appearance |
| 02/23/95 | Prehearing conference with CALJ Terry wherein J & L Mining was dismissed as a party-defendant |
| 03/14/95 | Dr. Powell read 03/14/95 x-ray as 2/2 (submitted by claimant) |
| 04/05/95 | Dr. Broudy performed exam and read 04/05/95 x-ray as 1/0 (submitted by Mt Top) |
| 04/28/95 | Mt. Top took claimant's deposition |
| 07/06/95 | Prehearing conference with CALJ Terry; Mt Top moved to be dismissed as party |
| 07/12/95 | Claimant moved to reopen proof time |
| 07/24/95 | Claimant moved to rejoin J & L Mining |
| 07/27/95 | Dr. Baker's deposition taken and he read 07/20/95 x-ray as 2/1 (submitted by claimant) |
| 09/12/95 | CALJ struck the deposition of Dr. Baker and dismissed claim |

Ultimately, claimant relied on the reports of Drs. Lane, Myers, Anderson, and Powell to allege total and permanent disability as a result of coal workers' pneumoconiosis; whereas, Mountain Top relied on the reports of Drs. Vuskovich, Poulos, and Broudy. It appears that the gist of the medical evidence

would have supported an award for retraining incentive benefits (RIB) pursuant to KRS 342.732(1)(a), or supported an award of income benefits under KRS 342.732(1)(d). Further, the physicians who expressed an opinion on the issue, related claimant's disease to his continued employment in the underground mining industry. Finally, it is clear that claimant had been diagnosed with pneumoconiosis and had filed his claim for benefits prior to his employment with Mountain Top.

Claimant's initial application for benefits, filed August 31, 1993, named only J & L Mining and the Special Fund as defendants. However, during his deposition on December 6, 1993, claimant indicated that he was last exposed to the hazards of the disease while employed by Mountain Top. Thus, at the prehearing conference on March 15, 1994, claimant was given 30 days in which to decide whether to name an additional defendant or to dismiss the claim. Thereafter, on April 11, 1994, claimant filed a motion to amend his claim so as to include Mountain Top as a defendant, and by subsequent order, claimant's motion to amend was sustained.

At the prehearing conference conducted by the CALJ on February 23, 1995, it was ordered that Mountain Top and the Special Fund should have until May 1, 1995, to complete their proof, and that claimant should have fifteen (15) days thereafter to complete his proof. In addition, J & L Mining was dismissed as a defendant. Finally, it was ordered that the claim be reassigned to the CALJ, and that the parties should move for a second prehearing conference after all proof time had been completed.

At a subsequent prehearing conference held by the CALJ on July 6, 1995, Mountain Top, relying on the case of *National Mines Corporation v. Pitts*, Ky., 806 S.W.2d 636 (1991), filed a motion asking to be dismissed as a defendant on the grounds that there was no evidence of any causal connection between claimant's employment with it and claimant's disease. As a result, claimant filed a motion for an extension of time in which to file a response to Mountain Top's motion to dismiss, and asked the ALJ to reopen the proof

time so that he could compile additional proof by taking the deposition of Dr. Baker on July 27, 1995. Subsequently, relying on the testimony of Dr. Baker, claimant filed a response to the employer's motion to dismiss asking that such be overruled and, in an abundance of caution, moving that J & L Mining be rejoined as a defendant. In response, Mountain Top filed a motion to strike the deposition of Dr. Baker on the grounds that it was taken outside of proof time.

On September 12, 1995, the CALJ overruled claimant's motion for an extension of time to take the testimony of Dr. Baker, struck the deposition of Dr. Baker from the record, dismissed Mountain Top as a defendant, dismissed the claim in its entirety, and overruled claimant's motion to rejoin J & L Mining as a defendant. Specifically, the order provided:

1. The motion by Mountaintop, Incorporated to be dismissed as a party defendant is sustained as it is clear that the Plaintiff had been diagnosed with coal workers' pneumoconiosis, stage 2, prior to his employment by Mountaintop, Incorporated and there is no medical testimony that plaintiff's exposure during his employment with Mountaintop, Incorporated contributed to the development of any occupational disease or progression thereof.

2. As the last remaining potential employer has been dismissed, this entire claim must also be and hereby is **DISMISSED.**

3. Plaintiff's motion to rejoin J & L Mining is **OVERRULED.** However, it is noted that the prior dismissal was without prejudice.

4. The motion to strike the deposition of Dr. Baker, which was taken out of proof time and without any extension thereof is **SUSTAINED.**

Claimant appealed to the Board, which, citing the case of *Pitts, supra,* upheld the CALJ's dismissal on the grounds that claimant had failed to prove that his occupational disease had, at least to some degree, arisen out of and in the course of his employment with Mountain Top. Moreover, the Board noted that claimant had filed a new applica-

tion for benefits naming J & L Mining as the defendant-employer, and that such action had been placed in abeyance pending the appeal of this claim. Likewise, the Court of Appeals affirmed the Board's decision.

Claimant appeals to this Court and argues that it is unrefuted that he was last exposed to the hazard of coal workers' pneumoconiosis during his employment with Mountain Top, and, thus, pursuant to the applicable statutes, Mountain Top is the responsible employer. Moreover, claimant submits that the report of Dr. Vuskovich established a causal connection between the subject employment and claimant's occupational disease, as such x-ray reading was performed during the time of his employment with Mountain Top and reflected that the exposure was injurious. Further, claimant alleges that the language in *Pitts, supra,* regarding a causal connection, does not apply herein as that case concerned an application for retraining incentive benefits (RIB), rather than a claim for total disability.

■■■ The clear and unambiguous language of KRS 342.316(1)(a) and KRS 342.316(10) places liability for the payment of compensation for occupational disease on the employer in whose employment the employee was last exposed to the hazard of the occupational disease. *See Rowe v. King–Darby Coals, Inc.,* Ky., 463 S.W.2d 342 (1971). The exposure incurred during a particular employment need not have been the actual cause of the disease in order for a causal connection to be established. Rather, all that is required is that the worker present evidence which proves that the type of exposure received during the subject employment would have eventually resulted in contraction of the disease, in other words, that it was injurious. *See* KRS 342.0011(4); *Howell v. Shelcha Coal Company,* Ky.App., 834 S.W.2d 693 (1992); *Childers v. Hackney's Creek Coal Co.,* Ky., 337 S.W.2d 680 (1960). Moreover, the statutes do not provide that a minimum time of exposure with a particular employer must be met as a prerequisite to that employer's liability. *Howell, supra.* Said otherwise, liability is based on the character of the exposure, not on its duration and not on whether it was the particular exposure asso-

ciated with the first diagnosis of the disease or with the progression of the disease from one category or degree of respiratory impairment to another.

The *Pitts* case concerned a claim for RIB benefits. The facts therein established that the category 1 disease had been diagnosed, the whole of the medical proof had been taken, and the claim for benefits had been filed and was awaiting adjudication, before the worker began his employment with the subsequent employer and received an additional injurious exposure. Since the claim was for RIB, the applicable version of KRS 342.732(1)(a) authorized payment of the benefit to the affected worker while he continued to work. Further, KRS 342.197 prohibited an employer from discriminating against a worker with category 1 disease with no significant respiratory impairment, and imposed penalties on an employer who refused to hire such a worker due to his condition.

Hence, under those circumstances, the Court created a very narrow exception to the rule of last injurious exposure. Specifically, the Court held that liability could not be shifted to a subsequent employer who had no causal connection to the previously established RIB claim and who was prohibited from refusing to hire the worker due to his condition. Moreover, the Court emphasized that the holding therein was strictly limited to its facts. *Id.* at 637.

In the case at bar, the ALJ dismissed the claim prior to ruling on the substance of the medical proof presented with regard to the extent of claimant's occupational disease. However, it appears that such evidence would have supported either an award for income benefits or a RIB award. Regardless, *Pitts* would not work to excuse Mountain Top from liability.

■■ First, *Pitts* would not apply to the present case if the evidence of record was found to support an award for income benefits. As concluded in *Smith v. Leeco,* Ky., 897 S.W.2d 581 (1995), income benefits are not payable to a working miner, regardless of the irrebuttable presumption of total occupational disability contained in KRS 342.732(1)(d), since KRS 342.316(1)(b) provides that the

payment of income benefits for occupational disease commences on the date of last injurious exposure. Furthermore, had the CALJ herein determined that claimant was suffering from category 2 disease, the employment discrimination provisions of KRS 342.197, which prohibited the subsequent employer in *Pitts* from refusing to hire the affected worker, would not be applicable. Thus, unlike the employer in *Pitts,* Mountain Top would not have been subject to the penalties for a violation of KRS 342.197 had it refused to hire claimant due to his occupational disease.

■ Therefore, it can be said that when determining the responsible employer in an income benefit claim when there have been successive employers, the relevant issue is which employment, as of the time the worker ceased working, constituted the worker's last injurious exposure. Herein, the evidence reflects that claimant's exposure to coal dust was consistent throughout his employment history, the medical evidence relates claimant's continued exposure to his illness, and Mountain Top has not asserted that the type of exposure claimant received during his employment therein was not injurious as defined in KRS 342.0011(4). Thus, Mountain Top is the employer responsible for payment of any benefits.

Second, even if the CALJ had found that the medical evidence only supported a RIB award, application of *Pitts* would not relieve Mountain Top of liability. Claimant had garnered some medical evidence and filed his initial claim prior to his employment with Mountain Top; however, additional medical proof was taken after commencement of the employment with Mountain Top. Thus, unlike *Pitts,* the whole of the medical proof had not been introduced, and the claim was not under submission to the ALJ, prior to claimant's employment with Mountain Top.

■ Therefore, it can be said that when determining the responsible employer in a RIB claim when there have been successive employers, the relevant issue is which employment, as of the time that the taking of all proof has ceased, constituted the worker's last injurious exposure. In this case, the responsible employer would be Mountain Top, based on the unrefuted evidence that

claimant's last injurious exposure occurred at Mountain Top.

■ We would note that it has long been established that pneumoconiosis is a progressive disease to which each injurious exposure contributes and from which an affected worker does not recover. Therefore, although a particular employment may not have been the actual cause of a worker's pneumoconiosis, liability flows from the recognition that the injurious exposure received in the employment did, to some extent, contribute to the worker's condition. Based on such accepted ideal, the fact that there was no evidence that claimant's exposure during his employment with Mountain Top caused a progression of the disease which was observable on x-ray is not determinative. Rather, as Mountain Top was the last employer wherein claimant was injuriously exposed, it is not "unfair" to hold Mountain Top responsible for payment of claimant's occupational disability benefits.

As much as the recently published Court of Appeals, opinion in the case of *Dixon v. Blue Diamond Coal Co.,* Ky.App., 960 S.W.2d 475 (1997), indicates that a different rationale from the one enunciated herein is to be employed in these types of cases, it is hereby specifically overruled.

Accordingly, the decision of the Court of Appeals in the case at bar is hereby reversed, and this claim is remanded to the CALJ for a finding regarding the category of disease from which claimant suffers and for further proceedings consistent with that finding and with this opinion.

STEPHENS, C.J., and LAMBERT, STUMBO and WINTERSHEIMER, JJ., concur.

COOPER, J., dissents by separate opinion in which GRAVES and JOHNSTONE, JJ., concur.

COOPER, Justice, dissenting.

KRS 342.316(10)(c) provides:

The employer in whose employment the employee was last exposed to the hazard of the disease shall alone be liable for pay-

ment of retraining incentive benefits awarded under KRS 342.732.

The issue presented by this case is the cut-off date for identifying the employer in whose employ the claimant was last exposed to the hazard. The relevant dates are as follows:

5/6/93:    Claimant ceased employment with J & L Mining.

6/29/93:    Claimant signed application for benefits against J & L Mining.

7/19/93:    Claimant began employment with Limousine Coal.

8/31/93:    Claimant filed application for benefits against J & L Mining.

10/2/93:    Claimant ceased employment with Limousine Coal.

10/6/93:    Claimant began employment with Mountain Top.

11/15/93:    Claimant ceased employment with Mountain Top.

5/10/94:    Claimant joined Mountain Top as party defendant.

2/23/95:    J & L Mining dismissed as party defendant.

7/24/95:    Claimant moved to rejoin J & L Mining.

9/12/95:    Claim dismissed.

As shown by the chronology set forth in the majority opinion, proof was taken in this case both before and after Mountain Top became the party defendant. Three x-rays were taken, interpreted, and submitted by the claimant which proved the existence of category 2 pneumoconiosis before he was even employed by Mountain Top. When the claimant's deposition was first taken, J & L Mining was the named defendant. After Mountain Top was substituted as defendant, J & L's attorneys left the case and Mountain Top's attorneys were forced to retake the claimant's deposition.

A similar scenario occurred in *National Mines Corp. v. Pitts,* Ky., 806 S.W.2d 636 (1991). When the application for benefits was filed, National Mines was the employer in whose employ Pitts had been "last exposed to the hazard." During the course of the litigation, Pitts accepted employment with another employer in whose employ he was again "exposed to the hazard." National Mines moved for dismissal, claiming it was no longer the employer in whose employ Pitts was "last exposed to the hazard." We held that "Where the category 1 disease was present, medical proof was taken, and the claim filed before Pitts was employed by another mine, there could be no causal connection between the disease that was the subject of the claim and that latter employment." *Id.* at 637.

In enacting KRS 342.316(10)(c), the legislature clearly intended to spread the risk of payments of RIB benefits among all coal mining employers by arbitrarily placing liability for each RIB award on the last employer in whose employ the claimant was exposed to the hazard associated with the inhalation of coal dust without regard to the degree of exposure or the length of employment, thereby eliminating the need for extensive litigation of the issue of causation. Logically, that would be the last such employer by whom the claimant was employed when the claim for benefits was filed. As recognized in the opinion of the Workers' Compensation Board, coal miners tend to have a transitory work history. As demonstrated by the chronology of this claim, requiring substitution of a new defendant every time a claimant changes employment serves only to lengthen the litigation and increase its costs. Furthermore, as we stated in *Pitts, supra:*

> [I]f we interpret KRS 342.316(10)(c) as urged by appellant, potential employers would be placed in a "catch–22" situation. They would be penalized [by KRS 342.197] if they discriminated against a worker such as Pitts or, if they hired such a worker, they would be forced to pay RIB benefits for a claim which had been established before the employment but merely was awaiting adjudication. The employer such as National, in whose employment the claim arose, would escape liability.

*Id.* at 637. We can eliminate that kind of unfair result simply by implementing the legislative intent that the employer liable for a RIB benefit be the employer in whose employ the claimant was "last exposed to the hazard" as of the date the claim was filed.

In this case, that employer was Limousine Coal.

Accordingly, I respectfully dissent and would affirm the unanimous opinions of the ALJ, the Board, and the Court of Appeals.

GRAVES and JOHNSTONE, JJ., join this dissenting opinion.