**GREG'S CONSTRUCTION, Appellant,**

v.

**Jerry KEETON; Johnson Floyd Coal Company; Miller Brothers Coal Company; Apostle Fuels; Honorable Otto Daniel Wolff, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2011–SC–000605–WC.

Supreme Court of Kentucky.

Aug. 23, 2012.

Rehearing Denied Nov. 21, 2012.

Ronald Jude Pohl, Erik Shane Branham, Pohl, Kiser & Aubrey, P.S.C., Lexington, KY, Counsel for Appellant, Greg's Construction.

Charles P. Wheeler, Jr., Kirk Law Firm, Pikeville, KY, Counsel for Appellee, Jerry Keeton.

James Gregory Allen, Katherine Michelle Banks, Riley & Allen, P.S.C., Prestonsburg, KY, Counsel for Appellee, Johnson Floyd Coal Company.

Jeffrey Dale Damron, Sarah Kathryn McGuire, Baird & Baird, P.S.C., Pikeville, KY, Counsel for Appellee, Miller Brothers Coal Company.

Terri Smith Walters, Jones, Walters, Turner & Shelton, PLLC, Pikeville, KY, Counsel for Appellee, Apostle Fuels.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) determined that the claimant sustained a work-related hearing loss and that KRS 342.7305(4) placed the entire liability for income and medical benefits on Greg's Construction, the employer with whom the claimant was last injuriously exposed to hazardous noise. The Workers' Compensation Board and the Court of Appeals affirmed.

Appealing, Greg's argues that the claimant failed to prove an injury attributable to his employment with Greg's or to prove that his employment with Greg's represented his last injurious exposure. He also argues that KRS 342.7305(4) does not preclude apportioning liability among employers where the evidence so permits.

We affirm. The record contains substantial evidence that audiograms and other testing revealed a pattern of hearing loss compatible with that caused by hazardous noise exposure and contains substantial evidence that the claimant sustained repetitive exposure to hazardous noise in the workplace, including his final employment with Greg's. KRS 342.7305(4) states unambiguously that "the employer with whom the employee was last injuriously exposed to hazardous noise shall be exclusively liable for benefits."

The claimant, Jerry Keaton, was born in 1955. He filed an occupational hearing loss claim after working for nearly 35 years as a heavy equipment operator at various surface mines. He testified when deposed in March 2010 that his employers neither required nor provided hearing protection. He stated that he purchased ear muffs about 15 years earlier and wore them because he thought he was experiencing a hearing loss, but no physician diagnosed a work-related hearing loss until shortly before he filed his claim. A chronological summary of the relevant evidence and procedural events is as follows:

- September 2007: Keeton began working for Johnson Floyd Coal Company.

- December 15, 2008: Dr. Manning evaluated Keeton's hearing at the request of his attorney; noted a 35–year history of exposure to loud noise while employed as a heavy equipment operator; assigned a 15% impairment rating based on hearing loss; and recommended hearing aids.

- March 5, 2009: Keeton filed a Form 103 application for benefits, naming

Johnson Floyd as the defendant and supporting the application with Dr. Manning's report. He alleged a work-related hearing loss that became manifest on December 15, 2008.

- March 6, 2009: The employment with Johnson Floyd ceased.
- On or about March 6, 2009: Keaton began working for Miller Brothers Coal Company.
- April 3, 2009: The employment with Miller Brothers ceased.
- May 13, 2009: Keeton began working for Apostle Fuels.
- May 14, 2009: Dr. Touma evaluated Keeton for Johnson Floyd; assigned a 9% impairment rating based on hearing loss; and reported that the high frequency portion of the hearing loss was compatible with noise-induced hearing loss. Keeton submitted the report subsequently "for its statistical content."
- July 1, 2009: Dr. Jones performed a university evaluation as required by 803 KAR 25:010, § 11. He assigned a 19% impairment rating; reported a pattern of hearing loss compatible with that caused by exposure to hazardous noise in the workplace; and opined that Keeton's hearing loss resulted from repetitive exposure to hazardous noise over an extended period of employment.
- July 10, 2009: Keeton began to work for Greg's Construction. He had also worked briefly for Greg's in 2006 or 2007, before becoming employed by Johnson Floyd.
- August 12, 2009: The ALJ granted Keeton's motion to join Miller Brothers and Apostle as defendants.

- January 8, 2010: The employment with Greg's ceased.
- March 3, 2010: Dr. Manning re-evaluated the claimant at the request of Apostle Fuels. He assigned an 18% impairment rating and noted that Keeton reported experiencing greater hearing loss than previously.
- April 14, 2010: The ALJ joined Greg's as a defendant.

Included among the contested issues were: 1.) whether Keeton sustained an "injury" as defined by Chapter 342; 2.) extent and duration; 3.) pre-existing active impairment; 4.)whether there was an injurious exposure at each employment; and 5.) which employer was liable for benefits.

Relying on the claimant's testimony that he was exposed to a lot of noise while operating "an open cab D5" for Greg's, the ALJ determined that he sustained an injurious exposure in his employment with Greg's. Noting that KRS 342.315 requires a university evaluator's clinical findings and opinions to be given presumptive weight and that the claimant began working for Greg's only a few days after the evaluation, the ALJ found no reason not to rely on the 19% impairment rating assigned by Dr. Jones. The ALJ concluded that KRS 342.7305(4) placed the entire liability for income and medical benefits on Greg's because it was the last employer and awarded partial disability benefits from the date that the employment ceased. Greg's appealed following the denial of its petition for reconsideration.

## I. STANDARD OF REVIEW.

■ The claimant had the burden of proof and risk of non-persuasion before the ALJ with regard to every element of his claim.[1] KRS 342.285 designates the

1. See *Roark v. Alva Coal Corporation*, 371 S.W.2d 856 (Ky.1963); *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735 (Ky.App.1984); *Snawder v. Stice*, 576 S.W.2d 276 (Ky.App.1979).

ALJ as the finder of fact in workers' compensation cases. It permits an appeal to the Board but provides that the ALJ's decision is "conclusive and binding as to all questions of fact" and, together with KRS 342.290, prohibits the Board or a reviewing court from substituting its judgment for the ALJ's "as to the weight of evidence on questions of fact."

KRS 342.285 gives the ALJ the sole discretion to determine the quality, character, and substance of evidence.[2] As fact-finder, an ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof.[3] KRS 342.285(2) and KRS 342.290 limit administrative and judicial review of an ALJ's decision to determining whether the ALJ "acted without or in excess of his powers;"[4] whether the decision "was procured by fraud;"[5] or whether the decision was erroneous as a matter of law.[6] Legal errors would include whether the ALJ misapplied Chapter 342 to the facts; made a clearly erroneous finding of fact; rendered an arbitrary or capricious decision; or committed an abuse of discretion. A party who appeals a finding that favors the party with the burden of proof must show that no substantial evidence supported the finding, *i.e.*, that the finding was unreasonable under the evidence.[7]

## II. ANALYSIS.

Greg's argues that the claimant offered insufficient evidence to entitle him to the presumption that he sustained an injury due to his employment with Greg's. Moreover, to extent that his hearing impairment represented a compensable injury, the evidence rebutted the presumption that the injury resulted from his employment with Greg's. Finally, Greg's argues that KRS 342.7305(4) does not preclude apportioning liability among employers where the evidence so permits. We disagree.

Repetitive exposure to loud noise produces noise-induced hearing loss, a form of injury caused by the traumatic effect of the vibrations produced by loud noise on the membranes of the inner ear.[8] Although KRS 342.0011(1) defines a compensable injury generally, the General Assembly enacted KRS 342.7305 in 1996 specifically to govern the compensability of occupational hearing loss due to hazardous noise exposure. KRS 342.7305(4), which sets forth the requirements for proving causation and imposing liability for noise-induced hearing loss, provides as follows:

> When audiograms and other testing reveal a pattern of hearing loss compatible with that caused by hazardous noise exposure and the employee demonstrates repetitive exposure to hazardous noise in the workplace, there shall be a rebuttable presumption that the hearing impairment is an injury covered by this chap-

2. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky.1985).

3. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky.1977).

4. KRS 342.285(2)(a).

5. KRS 342.285(2)(b).

6. KRS 342.285(2)(c), (d), and (e). *See also* American Beauty Homes Corp. v. Louisville &

*Jefferson County Planning & Zoning Commission*, 379 S.W.2d 450, 457 (Ky.1964).

7. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky.1986); *Mosely v. Ford Motor Co.*, 968 S.W.2d 675 (Ky.App.1998); *REO Mechanical v. Barnes*, 691 S.W.2d 224 (Ky.App.1985).

8. *See Caldwell Tanks v. Roark*, 104 S.W.3d 753, 755 (Ky.2003).

ter, and the employer with whom the employee was last injuriously exposed to hazardous noise shall be exclusively liable for benefits.

■ The ALJ did not err by determining that the claimant sustained a work-related injury. Substantial evidence supported the factual findings entitling the claimant to a rebuttable presumption that his hearing impairment was an injury covered by Chapter 342, *i.e.,* a work-related injury. Dr. Jones reported that the claimant exhibited a pattern of hearing loss "compatible with that caused by hazardous noise exposure in the workplace" and opined that the hearing loss resulted from "repetitive exposure to hazardous noise over an extended period of employment." Moreover, the claimant testified that he was exposed to loud noise repetitively throughout his nearly 35 years of work as a heavy equipment operator. Greg's offered no rebuttal evidence.

■ The ALJ did not err by determining that the claimant sustained an injurious exposure to hazardous noise in his employment with Greg's. Workers' Compensation is a statutory creation. KRS 342.0011(4) defines an injurious exposure as being "that exposure to occupational hazard which would, independently of any other cause whatsoever, produce or cause the disease for which the claim is made." Although Chapter 342 considers noise-induced hearing loss to be a gradual injury for the purposes of notice and limitations,[9] KRS 342.7305(4) treats the condition much like KRS 342.316(1)(a) and KRS 342.316(10) treat an occupational disease for the purpose of imposing liability. Mindful that none of these statutes makes an employer's liability contingent on a min-

imum period of exposure and that Chapter 342 contains but one definition of injurious exposure, we conclude that KRS 342.0011(4) defines the term not only with respect to a disease but also for the purpose of KRS 342.7305(4). Contrary to what Greg's would have us conclude, the final clause of KRS 342.7305(4) does not require a worker to prove that the last employment caused a measurable hearing loss. It refers to the type of exposure to hazardous noise that would result in a hearing loss if continued indefinitely.[10]

Consistent with the practical reality that workers change jobs, sometimes frequently, as well as the medical realities that noise-induced hearing loss develops gradually and that audiometric testing is based to some degree on the worker's subjective responses, KRS 342.7305(4) imposes liability on the last employer with whom the worker was injuriously exposed to hazardous noise. Like KRS 342.316(1)(a) and KRS 342.316(10), KRS 342.7305(4) bases liability solely on the fact that the employment involved a type of exposure known to be injurious, *i.e.,* a repetitive exposure to hazardous noise.

The claimant worked as a heavy equipment operator for nearly 35 years and testified that he was exposed to loud noises throughout his career, including his work with Greg's. Nothing tended to disprove his testimony, such as evidence that heavy equipment operation did not involve an injurious exposure to hazardous noise; that the claimant's work for Greg's differed from his previous work; that the ear muffs he stated that he wore were of such a quality that they prevented exposure to hazardous noise; or that Greg's required

9. *Special Fund v. Clark,* 998 S.W.2d 487 (Ky. 1999); *Alcan Foil Products, A Division of Alcan Aluminum Corp. v. Huff,* 2 S.W.3d 96 (Ky.1999).

10. *See Begley v. Mountain Top, Inc.,* 968 S.W.2d 91, 95 (Ky.1998).

employees to participate in a hearing conservation program that prevented exposure to hazardous noise.

Finally, the ALJ did not err by refusing to apportion liability among Greg's and the other defendants. Regardless of whether ALJs may apportion liability in other types of gradual injury claims, KRS 342.7305(4) is unambiguous with respect to liability for noise-induced hearing loss. The statute imposes liability "exclusively" on the employer with whom the employee was last injuriously exposed to hazardous noise. We presume that the legislature intended to say what it said.[11]

The decision of the Court of Appeals is affirmed.

All sitting. All concur.

---

11. *McDowell v. Jackson Energy RECC,* 84 S.W.3d 71, 77 (Ky.2002).